United States District Court
Southern District of Texas
**ENTERED**
August 30, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CIVIL ACTION NO. 5:17-CV-00117 |
| § | CRIMINAL ACTION NO. 5:15-CR-01435-4 |
| JOSE LUIS CARVAJAL, aka "NEPO", § | |
| § | |
| Defendant. § | |
| § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b)(3). This case has been referred, by order of the District Court, to the United States Magistrate Judge for an evaluation of a prisoner's petition for relief under 28 U.S.C. § 2255.

I.   Background

On November 24, 2015, a federal Grand Jury returned a seven-count indictment against several defendants accused of engaging in drug trafficking. *See, e.g.*, (Cr. Dkt. No. 32-1).[1] Petitioner and his son, Juan Carlos Carvajal, were charged with a number of trafficking-related offenses. *Id.* Petitioner pled guilty on June 1, 2016 to Count Three, possession with intent to distribute 50 kilograms or more of a mixture containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. (Cr. Dkt. No. 253 and accompanying Minute Entry dated June 1, 2016; Cr. Dkt. No. 439). This conviction carried a maximum sentence of 20 years in prison. 21 U.S.C. § 841(b)(1)(C). Because the charging

---

[1] The indictment appears at various places in the criminal docket. Criminal Docket Number 32-1 is the least-redacted version of the indictment to name all charges against Petitioner, including the one to which he pled guilty.

1

instrument did not allege that death or serious bodily injury resulted from the use of the substance Petitioner was charged with possessing, there is no minimum sentence. *See id.*

Pursuant to Petitioner's plea agreement with the government, the other charges against him were dismissed, and he waived his right to appeal or collaterally attack his sentence, except upon grounds of ineffective assistance of counsel. *See* (Cr. Dkt. Minute Entry dated June 1, 2016 (recording that Petitioner waived appeal)); *see also* (Cr. Dkt. Minute Entry dated November 16, 2016 (recording that the other counts were dismissed on the Government's oral motion)). The plea agreement, which Defendant signed, explicitly stated that § 2255 "affords the right to contest or 'collaterally attack' a conviction or sentence," and that "Defendant knowingly and voluntarily waives the right to appeal or collaterally attack the conviction and sentence," including the sentencing hearing itself, except for claims of ineffective assistance of counsel. (Crim. Dkt. No. 253 at 4).

The plea agreement also sets forth the relevant facts, to which the petitioner has admitted, underlying the criminal charges. Among the facts alleged are the following: that in a locked room of Petitioner's home, agents discovered "marihuana residue, a scale, a gun and a safe," (Crim. Dkt. No. 253 at 8); and that after obtaining a search warrant, the agents opened the safe and discovered "$35,000, a .25 caliber firearm, a .40 caliber firearm, and some jewelry." *Id*. at 9.

In an addendum, which both he and his attorney signed, Defendant acknowledged that his counsel explained each element of the plea agreement. (Crim. Dkt. No. 254). He further averred that he "h[as] read and carefully reviewed every part of this plea agreement with [his] attorney," and that he "understand[s] this agreement and [he] voluntarily agree[s] to its terms." *Id*.

After pleading guilty, Defendant and his son were both found to be participating in drug trafficking activity once again. As a result, the Probation Office recommended that the District

Court decline to grant any downward adjustment for accepting responsibility, and the Court followed that advice. (Sentencing Hr'g at 1:40:30 – 1:43:53).

On November 16, 2016, the District Court held a sentencing hearing for Petitioner and his son together. Both were present with their attorneys. The Probation Office had noted in its final presentence investigation report (PSR) that Defendant's residence contained, in addition to narcotics paraphernalia, a semi-automatic handgun and ammunition for an assault rifle. (Crim. Dkt. No. 330 at 9). During the hearing, the Court explained that both Jose Luis Carvajal and his son "are being given a plus two upward adjustment for use of a dangerous weapon . . . under [U.S.S.G.] § 2D1.1(b)(1)." (Sentencing Hr'g at 1:38:09 – 1:39:40). The Court observed that law enforcement had discovered multiple firearms in the Carvajal defendants' homes, and the two lawyers confirmed that was correct. (*Id.* at 1:39:20 – 1:39:49). The Court explained for a second time that Jose Luis Carvajal was receiving a two-level upward adjustment for the weapons found in his home, and the defendant said he understood. His attorney did not object. (*Id.* at 1:43:53 – 1:44:53). Finally, the Court directly asked counsel whether they had any objections regarding the weapons enhancement. Counsel for Juan Carlos Carvajal, the son, explained that they did not object to that enhancement "because he's accepted full responsibility and he's accepted the increase, because . . . the firearms were his." Counsel for Jose Luis Carvajal remained silent and did not object. (*Id.* at 1:58:29 – 1:59:15).

The Defendant's incarceration range under the Sentencing Guidelines was initially calculated as 188-235 months with a total offense level of 36. (Crim. Dkt. No. 330 at 41; *accord* Sentencing Hr'g at 1:43:53 – 1:44:53). After considering objections and adjustments, the District Court held Defendant accountable for a lesser amount of drugs than was seized, and calculated a base offense level of 24. In addition to the two-level dangerous weapons

enhancement, the Court applied another two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, under U.S.S.G. § 2D1.1(b)(12).  The Court declined to apply Probation's recommended four-level enhancement for playing a leadership role in the offense.  (Crim. Dkt. Nos. 330 at 32-33; 440 at 1).  This resulted in a total offense level of 28, with a recommended incarceration range of 78 to 97 months.  After ruling on the objections and hearing argument from the defendants and the Government, the District Court sentenced Petitioner Jose Luis Carvajal to the maximum under the guidelines range: 97 months in prison.  (Cr. Dkt. Minute Entry dated November 16, 2016).  He filed a Notice of Non-Appeal that same day.  (Cr. Dkt. No. 434).

On June 12, 2017, Petitioner timely filed a motion under 28 U.S.C. § 2255 seeking a reduction of his sentence.  (Civ. Dkt. No. 1; Cr. Dkt. No. 511).  He claims he is entitled to relief on two grounds of ineffective assistance of counsel: first, that his lawyer failed to object to the Court's application of a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon; and, second, that his counsel failed to inform him of his right to appeal the allegedly erroneous application of the firearm enhancement.  *Id.*

Carvajal contends that "there is no nexus between the guns and the drugs" that would support an enhancement under U.S.S.G. § 2D1.1(b)(1).  (Crim. Dkt. No. 511 at 5; Civ. Dkt. No. 1 at 5).  He argues that "the guns were never in [his] possession" and in fact belonged to his son and co-defendant, Juan Carlos Carvajal, who accepted responsibility for them.  (Crim. Dkt. No. 511 at 6; Civ. Dkt. No. 1 at 6).


II. <u>Analysis</u>

  A. <u>Waiver</u>

Ordinarily, if a petitioner waives his right to appeal or collaterally attack his sentence and does not allege that the waiver was defective or invalid, claims alleged in a § 2255 petition are barred. Here, however, the plea agreement specifically reserved to the Defendant "the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under [28 U.S.C. § 2255.]" (Crim. Dkt. No. 253 at 4). He has styled both grounds of his motion as ineffective-assistance-of-counsel grounds: first, that his counsel failed to object to the application of the dangerous-weapon enhancement; and second, that his counsel failed to inform him of his right to appeal. This is essentially the same as arguing the District Court was wrong to apply the enhancement—an argument the waiver clause of his plea agreement bars.

Several Circuits, including the Fifth, have held that attempting an end-run around the waiver clauses in this manner is not acceptable. *E.g., United States v. Pruitt*, 32 F.3d 431 (9th Cir. 1994); *United States v. Djelevic*, 161 F.3d 104 (2nd Cir. 1998); *Jones v. United States*, 167 F.3d 1142 (7th Cir. 1998); *Mason v. United States*, 211 F.3d 1065 (7th Cir. 2000); *United States v. Cockerham*, 237 F.3d 1179 (10th Cir. 2001); *Davila v. United States*, 258 F.3d 448 (6th Cir. 2001); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("We will follow this wealth of authority and hold that an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself.")

But this case is different. Here, unlike in those cases, the plea agreement's waiver clause specifically excluded claims of ineffective assistance of counsel. Out of an abundance of

caution, the Court thus feels it is appropriate to analyze the merits of Petitioner's ineffective-assistance-of-counsel claims, setting aside the waiver issue.

### B. Failure to Object to Sentencing Enhancement

Challenges to a sentence under 28 U.S.C. § 2255 must allege either that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). The Sixth Amendment to the Constitution guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Failure to render such assistance is a constitutional violation and may be challenged under 28 U.S.C. § 2255.

The burden rests with the petitioner to show ineffectiveness by a preponderance of the evidence. *Clark v. Johnson*, 227 F.3d 272, 284 (5th Cir. 2000). A successful ineffective-assistance-of-counsel claim must show, first, that counsel's performance was constitutionally deficient, i.e., that it fell below an objective standard of reasonableness; and, second, that the deficient performance caused "actual prejudice." *Strickland*, 466 U.S. at 688-94. A petitioner must prove both of these prongs, and failure to show either will defeat the claim. *Id.* at 697. To show deficiency, a petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009). "[J]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. To show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Conley*, 349 F.3d 837, 841-42 (5th Cir. 2003). However, "an attorney's failure to raise a meritless argument thus cannot

form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kilmer*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Paredes v. Quarterman*, 574 F.3d 281, 291 n.13 (5th Cir. 2009) (quoting and reaffirming *Kilmer*).

Petitioner alleges that the Court was wrong to apply the firearms enhancement, and that his counsel was deficient for failing to object.  Normally, a defendant cannot use Section 2255 to attack the trial court's application of the Sentencing Guidelines, *see, e.g., United States v. Jones*, 329 F. App'x. 573 (5th Cir. 2009); *United States v. Segler*, 37 F.3d 1131 (5th Cir. 1994); *United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992); here, however, the Petitioner has couched his objection in the language of a Sixth Amendment argument.  Just as some Courts have expressed discomfort with allowing "challenges to the sentence to be reconstituted as 'ineffective assistance' challenges" to escape waivers, *White*, 307 F.3d at 342 (describing *Djelevic*, 161 F.3d at 104), dressing up an improper enhancement-application challenge as an ineffective-assistance challenge causes similar disquiet.  Nonetheless, just as the Court set aside the waiver issue, *see* II.A *supra*, prudence counsels similar caution here, and the Court will examine the merits of the claim.

As recounted above, the Court imposed a two-level sentencing enhancement under U.S.S.G § 2D1.1(b)(1) for the recovery of firearms in the Defendant's residence—one of which was found in a locked room along with narcotics paraphernalia, and two more of which were found inside Defendant's locked safe alongside several thousand dollars. (Crim. Dkt. No. 253 at 8-9).  When the agents spoke to Defendant's wife and requested consent to search the locked room and the safe, she told them that only Defendant had the key to the room and knew the safe's combination. (Crim. Dkt. No. 330 at 15-16).

7

The enhancement for possession of a dangerous weapon under § 2D1.1(b)(1) is appropriate if the Government meets its burden "of establishing by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Romans*, 823 F.3d 299, 317 (5th Cir. 2016) (citation omitted). A spatial relation exists if "the weapon was found in the same location where drugs . . . are stored or where part of the transaction occurred." *United States v. Eastland*, 989 F.2d 760, 770 (5th Cir. 1993). If the government does make that showing, "the defendant can only avoid the enhancement by showing that it was clearly improbable that the weapon was connected with the offense." *Romans,* 823 F.3d at 317 (citing *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010).

The Government has met its burden of demonstrating temporal and spatial relation between the weapons, the trafficking, and the defendant. In *United States v. Puentes*, the Fifth Circuit affirmed a District Court's application of the dangerous-weapon enhancement where the Defendant was shown to have operated a drug-trafficking organization primarily from his home; weapons, narcotics, and related paraphernalia were discovered in the home; and the narcotics transactions took place at the residence. 681 F. App'x. 341, 344 (5th Cir. 2017) (unpublished) (per curiam). Here, the facts alleged in the plea agreement, which the defendant admitted, make clear that Carvajal utilized his residence as a receiving point for drug shipments, kept the weapons and related paraphernalia stored there, and coordinated with his co-conspirators in that location. Accordingly, there was a nexus between the offense conduct and the weapons. *See also United States v. Juluke*, 426 F.3d 323, 326, 328-29 (5th Cir. 2005) (per curiam) (upholding dangerous-weapon enhancement where the weapons were in the home but the drugs were found in a vehicle parked in the driveway); *United States v. Navarro*, 169 F.3d 228, 230, 235 (5th Cir.

1999) (upholding the enhancement where the weapons were in the home and the drugs were buried outside); *cf. United States v. Snelson*, 687 F. App'x 422, 424 (5th Cir. 2017) (unpublished) (per curiam) (finding a temporal relation existed even when the Defendant showed the weapon in question had not been purchased until more than two months after the conduct for which he was convicted.)

The Defendant cannot show that it was "clearly improbable" that the weapons were related to his drug-trafficking activity. He makes only the bare assertion that there was no "nexus between the drugs and the guns in Movant's house and shed," (Crim. Dkt. No. 511 at 6), but in light of the above, this is unpersuasive. He also attempts to shift the onus onto his son, who, he writes, "agreed to sign an affidavit stipulating that the guns found were in his possession and solely owned by him." *Id*. But this is irrelevant: even if Juan Carlos Carvajal owned all of the guns, Jose Luis Carvajal still had them in his home and his safe. A defendant may possess a weapon without owning it. *See, e.g., United States v. Ruiz*, 659 F. App'x. 188, 192-93 (5th Cir. 2016) (upholding application of the enhancement where the gun was found in the master bedroom of Defendant's uncle's home, paraphernalia was located throughout the home, and Defendant lived in the home); *United States v. Webster*, 960 F.2d 1301, 1310 (5th Cir. 1992) (upholding application of the enhancement where the defendant was holding the weapon as collateral on a loan disbursed to the gun's owner).

The District Court was correct to apply the sentencing enhancement for possession of a dangerous weapon. Because the objection would have been meritless, Counsel's failure to object on this point does not render his performance deficient. *See Kilmer*, 167 F.3d at 893.

C.  Failure to Inform of Right to Appeal the Firearm Enhancement

Petitioner's second allegation does not succeed for two reasons. First, any appeal on that particular ground would have been baseless because the firearm enhancement was properly applied. *See* Part II.B *supra*. Second, Petitioner had waived his right to appeal or collaterally attack his sentence, except upon grounds of ineffective assistance of counsel. It is important that Petitioner does not allege that his counsel failed to file an appeal in defiance of his request to do so. Even if the appeal is frivolous or barred, counsel must file one if asked, even if it amounts to nothing more than a short declaration that, in the lawyer's good-faith view, no meritorious issues exist. *See Anders v. State of Cal.*, 386 U.S. 738, 744 (1967). Instead, Petitioner is alleging only that his counsel did not inform him of his right to appeal the firearm enhancement specifically. That was not wrong, both because no error existed and because Petitioner had waived his right to make that sentencing challenge.

III.  Conclusion

For the foregoing reasons, the Magistrate Court **RECOMMENDS** that Defendant's §2255 motion be **DISMISSED**. The Clerk of Court is directed to mail this Report and Recommendation to the petitioner at his listed address.

IV.  Notice of Right to Object

Within 14 days of being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection

has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

SIGNED this 30th day of August, 2018.

                                             _____
                                             DIANA SONG QUIROGA
                                             United States Magistrate Judge